1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                    No.  2:11-cr-0449-KJM

12                    Plaintiff,

13           v.                                      ORDER

14    BRYAN R. SCHWEDER,

15                    Defendant.

16

17           After pleading guilty to a federal marijuana-related offense and the offense of

18    being a felon in possession of a firearm, defendant Bryan Schweder appealed the judgment

19    against him on the marijuana charge.  In reviewing the pending appeal, the Ninth Circuit

20    remanded the matter to this court to hold an evidentiary hearing to determine whether Schweder

21    strictly complied with California medical marijuana laws.  For the reasons set forth below, the

22    court finds Schweder was not in strict compliance with California medical marijuana laws.

23    I.      BACKGROUND

24           Between October 3 and 4, 2011, federal agents executed search warrants at three

25    locations located in Trinity County: (1) a marijuana grow site near Jim Creek in the Shasta-

26    Trinity National Forest, (2) a parcel of property owned by defendant Schweder on Dirt Road near

27    Hayfork, California (the "Dirt Road property") and (3) Schweder's residence in Hayfork at 420,

28    Highway 3 (the "Highway 3 property").  Plea Agreement, Factual Basis ("FB"), ECF No. 467, at

15; Presentence Rep. ("PSR"), ECF No. 535 (sealed), ¶¶ 6, 11, 20. At the Dirt Road property, agents found 146 marijuana plants and ten pounds of processed marijuana. FB at 15. At the Highway 3 property, agents found 347 marijuana plants consisting of approximately 117 mature plants and 230 smaller immature plants, approximately 300 pounds of hanging or drying marijuana plants, and 110 pounds of processed marijuana, along with eight firearms. FB at 15. In addition to Schweder, at least ten others were found at the Highway 3 property, FB at 15, including seven individuals residing in a shed containing 200 pounds of hanging marijuana plants. PSR ¶¶ 14; Rist Decl. ¶ 8, Def. Ex. 2-002. The seven individuals were involved in Schweder's marijuana cultivation operation at the Highway 3 property. PSR ¶¶ 14–17.

In a post-arrest statement, Schweder asserted the marijuana was "legal, it belonged to him, and he sold the marijuana from his store and supplied marijuana to sick military veterans." PSR ¶ 11. In a letter he submitted prior to sentencing, Schweder stated, "The plants at my house were being grown for my business Theriputic [sic] Healthcare. . . T.H.C." ECF No. 560-1, which was, or was closely related to, a licensed medical marijuana dispensary called Therapeutic Health Collective at the time located in Sherman Oaks, California. *See* Def. Exs. A– E, I (photograph of Therapeutic Health Collective, seller's permit, and other related documents); Maslin Decl. ¶ 2, Gov. Ex. 6; Gov. Ex. 6-005–006 (application for seller's permit for "Therapeutic Health Care/Collective Inc." located in Sherman Oaks); Gov. Ex. 6-007 (copy of Seller's Permit for Therapeutic Health Collective in Sherman Oaks).

On December 9, 2015, after motion practice culminating in the court's denial of Schweder's and his co-defendants' motion to dismiss the indictment, ECF No. 392, Schweder pleaded guilty to two counts of the superseding information: conspiracy to manufacture at least 100 marijuana plants (count one), 21 U.S.C. §§ 841(a)(1) & 846, and possessing a firearm as a felon (count two), 18 U.S.C. § 922(g)(1). Minutes for Change of Plea Hearing, ECF No. 468; Judgment and Commitment ("J&C"), ECF No. 565, at 1. On June 14, 2016, this court sentenced Schweder to 162 months on count one and 120 months on count two, to be served concurrently

/////

/////

2

for a total of 162 months.  J&C at 2.  Schweder appealed his sentence, and the Ninth Circuit remanded the case back to this court,

> for the sole purpose of conducting an evidentiary hearing to determine whether, at the times that acts giving rise to his conviction for conspiracy to manufacture marijuana occurred, Appellant had "strictly complied with all relevant conditions imposed by state law on the use, distribution, possession, and cultivation of medical marijuana."

Remand Order, ECF No. 621 (quoting *United States v. McIntosh*, 833 F.3d 1163, 1179 (9th Cir. 2016)).  The Ninth Circuit panel retained jurisdiction of the appeal pending this court's order addressing this question.  *Id.*

After a series of pre-hearing conferences, ECF Nos. 624, 634, 636, 651 & 660, the court held a four-day evidentiary hearing April 1, 2019, through April 4, 2019.  Minutes, ECF Nos. 664–668.  Schweder was represented at the hearing by appointed counsel Chris Andrian and Greg Anton.  The government was represented by Assistant United States Attorneys Richard Bender and Timothy Delgado.  Schweder and the government presented evidence and called several witnesses, and Schweder himself testified at length.  *See* ECF Nos. 671–73 (transcripts of Schweder's testimony).  After having closely observed the proceedings and reviewed the evidence, as explained below, the court finds Schweder did not strictly comply with California medical marijuana laws at the time that the acts giving rise to his conviction for conspiracy to manufacture marijuana occurred.

II.     LEGAL STANDARD

On December 16, 2014, Congress passed the Rohrabacher–Farr Amendment to the Consolidated and Further Continuing Appropriations Act, 2015.  It stated, in relevant part:

> None of the funds made available in this Act to the Department of Justice may be used, with respect to the State[] of . . . California . . . to prevent such State[] from implementing [its] own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.

Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014).  Congress reincorporated this language

/////

/////

3

into subsequent appropriations acts through 2020.[1]  *See* Consolidated Appropriations Act of 2020, Pub. L.  No. 116-93, § 531, 133 Stat. 2317 (2019).

In *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), the Ninth Circuit reviewed orders in several district court cases denying motions to prohibit the Department of Justice (DOJ) from using federal funds to prosecute defendants for federal, marijuana-related offenses, based on the language of the Rohrabacher-Farr Amendment.  *Id.* at 1168–70.  The court vacated the district court orders denying the motion, explaining that, if Congress "expressly prohibits DOJ from spending funds on certain actions," then "federal criminal defendants may seek to enjoin the expenditure of those funds."  *Id*. at 1173, 1179–80.  The court held the Amendment prohibited the DOJ from spending appropriated funds to prosecute "individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws."  *Id.* at 1177.  This prohibition did not extend to prosecution of individuals "who do not strictly comply with all state-law conditions regarding the use, distribution, possession, and cultivation of medical marijuana."  *Id.* at 1178.  The court remanded the cases and instructed the district courts to hold an "evidentiary hearing[ ] to determine whether [defendants'] conduct was completely authorized by state law."  *Id.* at 1179.  As explained above, the Ninth Circuit has issued a similar directive in this case.  Remand Order (quoting *McIntosh*, 833 at 1179).

Since the *McIntosh* hearing in this case, the Ninth Circuit has clarified that the burden of proof in a *McIntosh* hearing is on the defendant who, in effect, "'seek[s] to enjoin' the DOJ's use of funds to prosecute those who comply with state medical-marijuana laws."  *United States v. Evans*, 929 F.3d 1073, 1077 (9th Cir. 2019) (quoting *McIntosh*, 833 F.3d at 1173).  *Evans* also suggests the standard of proof to be applied in such a hearing is preponderance of the

---

[1] One article suggests the amendment is now referred to as the "Joyce Amendment."  Zachary Nelson, *If It Looks Like A Duck: Equal Protection, Selective Prosecution, and Geographic Differences in the Federal Prosecution of Marijuana Crimes Under the Controlled Substances Act*, 23 Lewis & Clark L. Rev. 1007, 1016 n.49 (2019) (citing Eric Sandy, *House Appropriations Committee Advances Medical Marijuana Protections*, Cannabis Bus. Times (May 17, 2018), https://www.cannabisbusinesstimes.com/article/house-appropriations-committee-joyce-amendment/ (identifying the latest iteration of the rider as the "Joyce Amendment")).

evidence.  *Id.* at 1076 ("[Defendants] bear the burden of showing that they are entitled to such an injunction by persuading the court that it is more likely than not that the state's medical-marijuana laws 'completely authorized' their conduct.").  The weight of district court cases suggests the same.  *See, e.g.*, *See United States v. Daleman*, No. 1:11-CR-00385-DAD-BAM, 2017 WL 1256743, *4 (E.D. Cal. Feb 17, 2017); *accord United States v. Gentile*, No. 1:12-CR-00360-DAD-BAM, 2017 WL 1437532, *7 (E.D. Cal. Apr. 24, 2017); *United States v. Carrillo*, No. 2:12-CR-00185-TLN, 2018 WL 4638418, *4 (E.D. Cal. Sep. 26, 2018).  Accordingly, the court's task is to analyze whether Schweder has met his burden of proving, by a preponderance of the evidence, that he strictly complied with California medical marijuana laws at the times of the acts giving rise to his marijuana-related conviction here.

III.  <u>DISCUSSION</u>

The court finds Schweder has not met his burden.  In particular, there are at least two instances in which, according to the evidence presented at the hearing, it appears Schweder was not in strict compliance with California's Medical Marijuana Program Act (MMPA), California Health & Safety Code section 11362.7 *et seq*.  At the relevant time, section 11362.775 allowed for the existence of medical marijuana cooperatives, providing:

> Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions[.]

Cal. Health & Safety Code § 11362.775 (West, effective 2004 to 2015)[2]; *see also People v. Urziceanu*, 132 Cal. App. 4th 747 (2005) (endorsing cooperative model in which one qualified patient sells marijuana to other qualified patients).

---

[2] California Health & Safety Code section 11362.775 has been amended several times since 2015, most significantly in 2017, when the legislature added a section defining the requirements for "a collective or cooperative."  *See* Cal. Health & Safety Code § 11362.775(b) (West, effective Jan. 2017 to June 26, 2017).  The section quoted above, beginning with "Qualified patients," has not changed significantly since the statute first came into effect in 2004.

A "qualified patient" is a "seriously ill" individual who had the "written or oral recommendation or approval of a physician" to use medical marijuana for his or her personal medical needs. Cal. Health & Safety Code § 11362.7(f) (West, effective 2004 to 2017) (defining "qualified patient" as "a person who is entitled to the protections of Section 11362.5, but who does not have an identification card issued pursuant to this article"); Cal. Health & Safety Code § 11362.5 (West, effective 1996 to 2019) (protecting from prosecution "seriously ill" individuals who possessed or cultivated marijuana "for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician"); *see also People v. Wright*, 40 Cal. 4th 81, 94 (2006), *as modified* (Dec. 20, 2006).

The statute defined a "primary caregiver" as an individual "designated by a qualified patient or by a person with an identification card, who has consistently assumed responsibility for the housing, health, or safety of that patient or person[.]" Cal. Health & Safety Code § 11362.7(d) (West, effective 2004 to 2017); *People v. Mentch*, 45 Cal. 4th 274, 283 (Cal. 2008).

The particular requirements for a medical marijuana collective to be legal have evolved over the last fifteen years, but even the more generous interpretations of the California statutes have required all those involved in the production or sale of medical marijuana to be qualified patients or primary caregivers. *See, e.g.*, *People v. Anderson*, 232 Cal. App. 4th 1259, 1277–78 (2015) (approving collective in which "day-to-day business operations can involve buying from grower members and selling to consumer members, so long as all members are patients or primary caregivers . . . ."); *People v. Orlosky*, 233 Cal. App. 4th 257, 271 (2015) (approving an informal collective cultivation arrangement where all participants were qualified patients). The California Attorney General Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use, published in 2008, confirm this requirement, stating: "[A legal medical marijuana] collective should not purchase marijuana from, or sell to, non-members; instead, it should only provide a means for facilitating or coordinating transactions between members." California Attorney General's Guidelines for the Security and Non-Diversion of

Marijuana Grown for Medical Use, 8 (Aug. 2008)[3]; *see also Daleman*, 2017 WL 1256743, at *5–6 (quoting same).

### A. Hired Workers

The evidence shows Schweder hired at least seven individuals to assist him in harvesting and trimming the marijuana grown at the Highway 3 property. *See* Rist Decl. ¶ 8 (listing individuals arrested at Highway 3 property); April 2, 2019 Hr'g Tr. at 156: 14–21 (Schweder testifying there were "Hispanic national workers" at the Highway 3 marijuana grow in 2011); *id.* at 157:13–16 (Schweder testifying he was responsible for paying the "Hispanic nationals" working at his marijuana grow in 2011); Gov. Ex. 26C (photos of Victorino Betancourt-Meraz taken by agents during execution of warrant at Highway 3 property); Gov. Ex. 26D (photos of Fernando Reyes-Mojica, same); Gov. Ex. 26E (photos of Manuel Madrigal Olivera, same); Gov. Ex. 26F (photo of Rafael Mojika Reyes, aka Rafael Camacho, same); Ex. 26G (photo of Homero Lopez-Barron, same); Gov. Ex. 26H (photos of Juan Cisnerus-Vargas, same); Ex. 26I (photo of Oseas Cardenas-Tolentino, same). The government repeatedly referred to these persons as the "Hispanic national workers." *See, e.*g., April 2, 2019 Hr'g Tr. at 157:13–16. Regardless of their nationality, Schweder has not offered evidence to show by a preponderance of the evidence that these individuals were qualified patients or primary caregivers.

Schweder testified that everyone he worked with to produce marijuana was a member of the THC collective and had a prescription to use medical marijuana, *id.* at 208:20–209:25, and Karen Niemi, his girlfriend at the time, testified that in the Spring of 2011, a doctor visited the Highway 3 property and signed medical marijuana referrals for "everybody that needed one or wanted one" including "several other people that were working there."[4] Schweder

---

[3] The Guidelines, available at: https://oag.ca.gov/system/files/attachments/press_releases/n1601_medicalmarijuanaguidelines.pdf (last visited February 20, 2020), are attached to this order as Exhibit A.

[4] To confirm the accuracy of these quotes, the court has consulted the rough transcript of the April 3, 2019 hearing, which is not filed on the public docket but may be ordered by any party.

did not produce any other evidence to support this claim. Though defendant offered several physician's referrals, *see* Def. Ex. J (sampling of patient physician approvals); *see also* Def. Ex. R (2009 physician approvals), none of the referrals he offers was issued to any of these seven individuals. The government introduced a photograph taken by law enforcement agents that shows four documents displayed on a fence or wall at the Dirt Road property, the other grow site separate from Schweder's residence at Highway 3. Gov. Ex. 22K; April 2, 2019 Hr'g Tr. at 123:3–10 (Schweder confirming he posted "names" of collective members on fence at Dirt Road). These documents appear to be prescriptions or licenses for individuals to use medical marijuana. Gov. Ex. 22K–22L (close-up photo of three of the documents). Only two of the documents are legible and they are issued to Renoir Rees Banwer and Paul Magaletta. *Id.* The other two include photographs of the prescription holders. *Id.* Neither the names nor photographs connect these prescriptions with the individuals who were working for Schweder in his marijuana growing operation at the time they were arrested along with Schweder. *See* Rist Decl. ¶ 8 (listing individuals arrested at Highway 3 property); Gov. Ex. 26C (photos of Victorino Betancourt-Meraz taken by agents during execution of warrant at Highway 3 property); Gov. Ex. 26D (photos of Fernando Reyes-Mojica, same); Gov. Ex. 26E (photos of Manuel Madrigal Olivera, same); Gov. Ex. 26F (photo of Rafael Mojika Reyes, aka Rafael Camacho, same); Ex. 26G (photo of Homero Lopez-Barron, same); Gov. Ex. 26H (photos of Juan Cisnerus-Vargas, same); Ex. 26I (photo of Oseas Cardenas-Tolentino, same). Again, Schweder presented no evidence suggesting any of the hired workers at the Highway 3 property had physician's referrals or were primary caregivers.

When confronted with this lack of evidence, Schweder testified that physician referrals for all individuals working on the grow were located in a box in his residence that was confiscated by agents upon his arrest and, he suggested, mysteriously "never logged into []" evidence." April 2 Hr'g Tr. at 209:3–210:4 (physician's referrals and membership agreements for hired workers were in "a box that was somehow never logged into the evidence" at the time of Schweder's arrest); *id.* at 153:25–154:2 ("I don't know what happened to a lot of this paperwork."). Even accepting Schweder's testimony as accurate, these documents were not the

only way Schweder could obtain evidence that his hired workers were qualified patients or primary caregivers. Even with counsel's assistance, Schweder did not attempt to call as a witness or offer a declaration from a single hired worker stating the worker had a physician's approval to use medical marijuana. Although Schweder and Niemi each testified that a doctor named Bagdley purportedly issued prescriptions, *see* April 3 Hr'g Tr. at 344:3–24, and a Lawrence Bagdley, M.D., appears on Schweder's witness list, Def. Witness List, ECF No. 643, at 4, there is no evidence in the record that Schweder's counsel ever actually attempted to subpoena Dr. Bagdley, and he did not testify at trial. *See* Application for Issuance of Subpoenas, ECF No. 655 (requesting the court order the government issue subpoenas for defendant's witnesses, not including Dr. Bagdley).

Thus, other than Schweder and Niemi's vague and uncorroborated testimony, there is no evidence the seven hired workers at the Highway 3 grow were qualified patients or acting as primary caregivers to a qualified patient. As such, the court finds Schweder has not met his burden of showing he complied with California Health & Safety Code section 11362.775, which, at the time, protected from prosecution only qualified patients or primary caregivers. *See* Cal. Health & Safety Code § 11362.775.

    B.    <u>Sales to a Person Going by the Nickname "Dam"</u>

The government's evidence strongly suggests Schweder sold marijuana to an individual who was neither a qualified patient nor a primary caregiver around the time that acts giving rise to his conviction occurred, which would not have been protected by California Health & Safety Code section 11362.775. Schweder has not rebutted this showing and so, here as well, he has not met his burden.

Schweder testified he sold a significant amount of marijuana to a friend of his nicknamed "Dam," for over $500, in cash, per pound. April 2 Hr'g Tr. at 104:21–24 (Schweder testifying he provided marijuana to Dam), 105:12–106:11 (Schweder testifying he directly sold Dam more than one pound but less than ten pounds of marijuana in 2010 or 2011, and Dam paid him over $500 in cash in return). Schweder explained he did not know how much marijuana he sold Dam in total, but he recalled that Dam made edible marijuana products that he distributed to

1   different dispensaries.  *Id.* at 57:19–20, 105:12–106:7.  Text messages between Dam and

2   Schweder, from three days before agents executed the search warrant, corroborate the testimony

3   that Schweder sold Dam marijuana, and suggest Schweder had sold Dam the type of marijuana he

4   grew at Highway 3 and was planning to sell more to Dam and his friends.  *See* Gov. Ex. 12A-008

5   at line 10 (text from Dam to Schweder on Sept. 30, 2011: "Need 5 mor trinity k 4 2maro. Plus the

6   other 10 & the singles. my friend luvs the trinity. Got a lota peeps kumin yer way. My guys here

7   frum ny"); Frick Decl. ¶ 23, Gov. Ex. 1-008 (interpreting this text to mean Dam is ordering five

8   pounds of Trinity Kush marijuana plus the ten pounds he already ordered and the one pound bags,

9   and that Dam has buyers from New York interested in purchasing the marijuana); April 2 Hr'g

10  Tr. at 66:18–69:14 (Schweder testifying he believes Dam is asking him for Trinity Kush

11  marijuana, which is a type of marijuana Schweder was growing); Gov. Ex. 12A-008 at line 13

12  (text from Dam on Sept. 30, 2011, in response to Schweder's text, "What singles ?": "He askt 4

13  headband master k. Purple k & sour d. then make order for 10 20 etc. A lot mor on the way beleiv

14  me. Boxes"); Frick Decl. ¶ 24 (interpreting this text to mean Dam is telling Schweder he has three

15  buyers interested in types of marijuana known as Headband Master Kush, Purple Kush and Sour

16  Diesel and will be ordering much more in the future); April 2 Hr'g Tr. at 71:2–20 (Schweder

17  testifying text is referring to strains of marijuana).

18          Schweder presented insufficient evidence to rebut the government's showing that

19  his marijuana sales to Dam, which he admitted to, were illegal under state law, because there is

20  no credible evidence that Dam was a qualified patient or primary caregiver.  Schweder testified

21  Dam was a "member" of the medical marijuana collective, THC, implying he was a qualified

22  patient.  *Id.* at 53:9–10; *see also id.* at 210:5–14.  Yet, in virtually the same breath Schweder

23  stated, and then twice repeated, that he did not know Dam's real name.  *Id.* at 53:9–12, 54:4–6,

24  59:16–18.  Schweder not knowing Dam's name supports a strong inference that Schweder never

25  saw any documentation identifying Dam as a qualified patient, because that documentation would

26  have included Dam's full name.  *See, e.g.*, Def. Ex. J (sampling of physician recommendations

27  and THC membership agreements, which all included patients' full names); *see also* April 2 Hr'g

28  Tr. at 102:5–8 (Schweder testifying Dam's name does not appear on the excerpt of THC's patient

10

list offered by defense as Ex. K).  Furthermore, as with the hired workers, Schweder did not offer any documentation or declaration showing, or seek to call any witness to testify[5], that Dam had a physician's recommendation to use marijuana or that Dam was a primary caregiver.

In sum, the evidence supports the conclusion Schweder sold marijuana to Dam around the time of Schweder's arrest, and Schweder did not show by a preponderance of the evidence that the sale was in compliance with California law.

IV.    CONCLUSION

With respect to the workers he hired and the individual nicknamed "Dam," Schweder has not met his burden of showing he complied with California Health & Safety Code section 11362.775, protecting those involved in buying, selling, and cultivating marijuana as part of a collective among qualified patients or primary caregivers only.  *See* Cal. Health & Saf. Code § 11362.775; *People v. Anderson*, 232 Cal. App. 4th 1259, 1277–78 (2015).  His failure to meet his burden in these two respects is sufficient to support the court's finding, as it does here, that "at the times that acts giving rise to his conviction for conspiracy to manufacture marijuana occurred," Schweder had not "strictly complied with all relevant conditions imposed by state law on the use, distribution, possession, and cultivation of medical marijuana."  Remand Order at 1

---

[5] Schweder initially filed a long list of possible witnesses, ECF No. 643, which included Dr. Lawrence Bagdley, and others, but no one named Dam, nor any of the aforementioned seven individuals arrested at the Highway 3 property.  Due to his inability to pay the witness's fees, Schweder filed a request for the court to order the government to issue subpoenas to a small group of defendant's witnesses.  ECF No. 655 (listing James Faycurry; Donald Rogers; Karen Niemi; Stephanie Lowe; Delilah Cotto; Joel Moniz).  This request was granted, ECF No. 657, and Donald Rogers, Karen Niemi, and Delilah Cotta testified live as well as Chris Conrad, identified as an authority on medical marijuana, and Anthony Hopkins, defendant's private investigator.  Defendant also attempted to introduce a declaration by Alex Kreit, Def. Ex. Q.  The government filed motions in limine to exclude the expert opinion testimony of Alex Kreit and to exclude, in part, the declaration of Anthony Hopkins.  ECF Nos. 661–62.  Ultimately, the court admitted a limited version of the Anthony Hopkins declaration, because it contained impermissible hearsay.  Many of the individuals with which Hopkins described speaking did testify live, however.  Def. Ex. L ¶¶ 9–10, 12–13 (describing conversations with Donald Rogers,  Karen Niemi, Delilah Cotto, and Allen Dana, who all testified live).  The court granted the motion in limine to exclude the declaration of Alex Kreit, as inappropriate legal testimony, but allowed him to testify live in a limited fashion; ultimately, the defense did not call him to testify.

11

(quoting *McIntosh*, 833 F.3d at 1179). For this reason, the court need not reach the remainder of the issues raised by the evidentiary hearing.

Consistent with the Ninth Circuit's instructions, "the parties are ordered to file [this] order with [the Ninth Circuit] when issued." Remand Order at 1.

Schweder's motion for bail review pending appeal, ECF No. 690, is hereby denied as MOOT, and the March 2, 2020, hearing date is VACATED.

IT IS SO ORDERED.

DATED: February 27, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE